**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOQUE HOLDINGS (BERMUDA) LTD., | No. C 09-2651 MHP |
| Plaintiff, | |
| v. | **MEMORANDUM & ORDER** |
| KEYSCAN, INC., | **Re: Keyscan's Motion to Join Primax and Polaris or, in the Alternative, to Dismiss for Failure to Join an Indispensable Party** |
| Defendant. | |

On June 15, 2009, Soque Holdings (Bermuda) Ltd. ("Soque") brought this action against Keyscan, Inc. ("Keyscan") alleging infringement of U.S. Patent No. 5,499,108 ("the '108 patent"). Around September 2009, Soque sold the '108 patent to nonparties Primax and Polaris in a patent sale agreement. Docket No. 43 (Godinez Dec.), Exh. A (Patent Sale Agreement). This agreement explicitly allows Soque to continue litigating this action, and grants back to Soque an "exclusive worldwide, royalty free, perpetual, non-transferable right to make, have made, use, offer for sale, market, sell, distribute and otherwise exploit products and services" related to the '108 patent. *Id.* ¶ 5.1. The exclusive license does not survive the sale of Soque's assets or business if either occurs within three years, unless Primax provides written consent. Although there are no restrictions in the agreement with respect to this litigation *per se*, section 6.2 of the agreement states that "no sub-license shall be granted to KeyScan without the prior consent of Primax." *Id.* ¶ 6.2. A *nunc pro tunc* addendum to the patent sale agreement was executed on January 8, 2010, which confirmed the aforementioned provisions. *Id.*, Exh. B (Addendum). Specifically, the addendum stated that Soque had the right to sub-license the '108 patent to others, except that any sub-license to KeyScan

required consent of Primax, and that Soque had the exclusive right to sue under the '108 patent. *Id.* ¶ 1.

Soque's standing to sue with respect to post-agreement damages turns on whether either Primax or Polaris has retained "all substantial rights" in the '108 patent. *Propat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187, 1189 (Fed. Cir. 2007) (a patent owner may confer standing on another if the owner "conveys all substantial rights in the patent to the transferee."). Keyscan claims that Soque's licensing agreement does not convey all substantial rights in the '108 patent to Soque because: 1) Soque's rights are non-transferable; 2) Soque must seek consent from Primax prior to granting a sub-license to Keyscan; and 3) without the joinder of Primax and Polaris, Keyscan will be exposed to duplicative litigation.

Keyscan makes much of the non-transferable nature of Soque's exclusive license; however, it does not explain what rights, if any, regarding transferability were retained by either Polaris or Primax. In light of the patent sale agreement, which grants an exclusive, worldwide, royalty free and perpetual license to Soque, neither Polaris nor Primax appears to have retained any rights, lets alone substantial rights, in the patent vis-á-vis the "non-transferable" clause in the patent sale agreement. Thus, even though Soque does not have the ability to assign its exclusive, worldwide, royalty free and perpetual license to a third party, there is no indication that either Polaris or Primax retained the ability to enter into an exclusive, worldwide, royalty free and perpetual license with a third party. The failure of either Polaris or Primax to retain such a right demonstrates that neither retained substantial rights in the '108 patent. This failure is fatal to Keyscan's argument.

The Federal Circuit's decision in *Propat Int'l Corp.* does not compel a different result. 473 F.3d 1187. There, the patent owner retained rights to: maintain the patent; receive proceeds of the commercial exploitation of the patent; veto the grantee's licensing and litigation decisions; veto any transfer of the grantee's rights; and terminate the agreement with the grantee. The retention of this basket of rights was found to be a substantial retention of rights. *Id.* at 1190–93. Similarly, *Sicom Sys. v. Agilent Tech., Inc.*, 427 F.3d 971 (Fed. Cir. 2005), does not compel a different result. There too the patent owner retained a litany of rights, including the right to veto any sub-license, the right

2

to levy additional royalties and the right to grant contracts to further develop the invention claimed in the patent. *Id.* at 978–79. Neither case held that the non-transferable nature of an exclusive license was, by itself, sufficient to negate standing.

Although the *Propat Int'l Corp.* court based its holding on its finding that there was "no conveyance of an exclusive license to make, use, and sell the invention," it did speak to the issue of non-transferability. 473 F.3d at 1192. Keyscan seizes upon the following language:

> [Patent owner's] right to veto any transfer of [plaintiff's] rights under the agreement is particularly significant, the more so because the agreement expressly indicates that [patent owner] is free to veto any such transfer decision, even if it does so 'arbitrarily.' The right to dispose of an asset is an important incident of ownership, and such a restriction on that right is a strong indicator that the agreement does not grant [plaintiff] all substantial rights under the patent. *See Sicom Sys.*, 427 F.3d at 979; *Intellectual Prop. Dev.*, 248 F.3d at 1345; *Abbott Lab.*, 47 F.3d at 1132. In fact, the court in *Sicom Systems* referred to the restraint on transferability of the rights under the agreement as 'fatal' to the argument that the agreement transferred all substantial rights in the patent. 427 F.3d at 979.

473 F.3d at 1191. The right to dispose of an asset is indeed one important indicator of ownership. Here, Soque has the right to dispose of almost the entire asset at issue—the exclusive, worldwide, royalty free and perpetual license. There are no restrictions on Soque's ability to sub-license the '108 patent, save a consent requirement pertaining solely to a sub-license to Keyscan. As discussed below, this consent requirement is not a substantial restriction. Significantly, there appears to be no restriction on Soque's ability to sub-license to a third party (except Keyscan) on an exclusive, worldwide, royalty free and perpetual basis. Consequently, save Soque's inability to transfer the patent sale agreement itself, Soque has the right to dispose of almost all assets acquired through the patent sale agreement.

Keyscan is correct that a right to sub-license is not identical to a right to assign; however, the distinction it seeks to draw places form over substance. The non-transferability of the agreement appears to refer only to Soque's ability to assign the agreement to a third party. Keyscan's argument boils down to this: Soque cannot unilaterally assign its exclusive, worldwide license to a third party; consequently, it does not have standing to sue for ongoing harm that it is allegedly suffering. The very premise of this argument is flawed. Soque's inability to do something that would deprive it of standing—assign its exclusive, worldwide and perpetual license to a third party—does not itself

3

1 deprive Soque of standing. This restriction does not demonstrate that Soque does not have all
2 substantial rights in the '108 patent.

3 Secondly, Primax's retention of a veto over Soque's ability to sub-license to Keyscan does
4 not amount to the retention of substantial rights. A license agreement transfers substantial rights
5 even if the patent owner's consent is required for *all* sub-licenses. *Vaupel Textilmaschinen KG v.*
6 *Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 875 (Fed. Cir. 1991) ("[t]he sublicensing veto was a
7 minor derogation from the grant of rights. It did not substantially interfere with the full use by
8 [plaintiff] of the exclusive rights under the patent."). Keyscan does not even attempt to distinguish
9 *Vaupel Textilmaschinen KG*. Instead, its support pertains to situations where the patent owner
10 retained significantly more rights than a singular consent requirement regarding a particular sub-
11 licensee. *See Propat Int'l Corp.*, 473 F.3d at 1190–93; *Sicom Sys.*, 427 F.3d 978–79. In light of the
12 Federal Circuit's decision in *Vaupel Textilmaschinen KG*, Keyscan's argument is unpersuasive. For
13 the same reasons, the combination of non-transferability and the consent requirement—both minor
14 derogation of rights—also do not lead to a retention of substantial rights by either Primax or Polaris.

15 Thirdly, Keyscan is not subject to duplicative damages since estoppel principles will apply to
16 a suit by Polaris or Primax against Keyscan. In addition, according to a release executed by both
17 Polaris and Primax, each has "waive[d] any right to assert infringement against Keyscan in the
18 future, other than indirectly through the claims already being made by Soque in the Keyscan
19 Litigation." Covenant and Release ¶ 1 (provided during oral argument).

20 Finally, the possibility that Soque's license may extinguish at some unknown point in the
21 future—upon sale of Soque's assets or business—does not eliminate Soque's current standing. Nor
22 does that somehow lead to a retention of substantial rights by either Polaris or Primax. *Cf. Vaupel*
23 *Textilmaschinen KG*, 944 F.2d at 875 (reversionary right to patent in the event of bankruptcy or
24 termination of production—a condition subsequent—does not amount to retention of substantial
25 rights).

26 In sum, Soque has standing to sue through its exclusive worldwide, royalty free, perpetual,
27 non-transferable right to make, have made, use, offer for sale, market, sell, distribute and otherwise

28

4

exploit products and services related to the '108 patent. Even if the non-transferable nature of the patent sale agreement and the consent requirement place certain nominal restrictions upon Soque, they are insufficient to comprise a substantial right. Keyscan's motion is DENIED.

IT IS SO ORDERED.

Dated: May 12, 2010

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

5